Opinion delivered June 5, 1886.

---

[No. 4016.]

CAROLINE HARRIS *v.* THE STATE.

EMBEZZLEMENT—EVIDENCE.—The indictment alleged separately the value of the several articles embezzled, which said values aggregated about fifty dollars. Upon the question of values, a witness for the State testified that they were "about as alleged" (in the indictment), amounting to more than twenty dollars. It is urged that such mode of proving value is not permissible, because reference must be had to the indictment in order to make it certain, and the indictment was not read in evidence. *Held,* that the objection is without merit. The indictment having been read to the jury, as a pleading in the case, became a record in the case, of which the court was authorized to take judicial notice, and which sufficed to inform the jury that the alleged aggregate value of the goods embezzled exceeded twenty dollars, and to admit evidence that the articles were of the value charged, and amounted in the aggregate to a sum exceeding twenty dollars.

APPEAL from the Criminal District Court of Galveston.   Tried below before the Hon. Gustave Cook.

The conviction in this case was for the embezzlement of sundry articles of wearing apparel, the property of George T. Morris, aggregating in value a sum in excess of twenty dollars, in Galveston county, Texas, on the fifteenth day of September, 1884. A term of two years in the penitentiary was the penalty assessed by the jury.

George T. Morris was the first witness for the State.   He testified that he recognized the articles of clothing in court as his property.   The defendant, at the time of the alleged embezzlement, was in the employ of the witness as wash woman, and came into possession of the clothing as such.   Witness had no personal knowledge of any other fact connected with this case. The witness testified to the value of the articles.

Mrs. George T. Morris, the wife of the first witness, testified, for the State, that she employed the defendant to do her family washing in September, 1884.   Defendant gave her name as Sabine Johnson, and said that she lived on Broadway, near the colored church, between Twentieth and Twenty-first streets, in the city of Galveston, Texas.   She obtained the articles of clothing named in the indictment, for the purpose of washing them, and was to return them on a subsequent specified day.   The separate values of the articles were about as alleged in the indictment, and in the aggregate their value exceeded twenty dollars.   It was the recollection of the witness that, when she gave the clothes out, she kept a list of them, and penciled down the name given by the defendant.   Defendant took the clothes away, and witness did not see her again until June 1, 1885, nearly a year afterwards, unless, as witness thought, she once saw her on the streets of Galveston.   If so, the defendant turned before meeting the witness, and witness did not get to see her face.   Witness made inquiries for Sabine Johnson, but could hear nothing of such a person.   Nearly a year after the clothes were taken off by the defendant, witness was sent for to go to the station house to pass upon the identity of a person held for the embezzlement of the clothing.   In that person the witness identified the defendant as the woman who had got the clothes. Defendant first denied knowing the witness, but when the detective, witness, and the defendant were nearing the house of the latter, going thither to look for the clothes, defendant admitted

that she was the woman who got the witness's clothes, and proposed to pay for the clothes, if witness would drop the matter. She made no tender of payment. Witness identified the articles of clothing in court as part of the supply delivered to the defendant to be washed. The names had been cut off, but witness knew them by their texture, material, sewing, etc. The articles in evidence were found in the defendant's house.

Cross-examined, the witness testified that herself and daughter, and the defendant and her grown daughter were the only persons present when the contract for washing was made and the clothes given out. Witness did not remember that the defendant said that her name was Caroline Harris, and that she lived on Avenue I on Fortieth street, near Mr. Mitchell's. Defendant obtained the clothing to wash in September, 1884, and not in December, 1884. Witness did tell defendant that her regular wash woman had disappointed her in not coming for the clothes, but she did not tell defendant that she was anxious to have the clothes done up for Christmas. Witness did not tell defendant that, as that washing was light, she would pay defendant but two and a half dollars for that, but would increase the pay as the washing grew heavier. The witness did not remember that the defendant's husband and daughter called on her in December, 1884, and that she, witness, agreed to take fifteen dollars for the clothing taken off by defendant, and call it "square." Witness had no recollection of a visit to her by defendant's husband and daughter, prior to defendant's arrest. They called on the witness once after the arrest of the defendant, and asked if witness and her husband would accept a mortgage on their house to secure payment for the clothes. Witness's husband was not then at home, and witness told them she could not negotiate before consulting her husband. When called to identify the defendant, the witness was taken into the office of the chief of police at the police station. Officer Cahill brought the defendant into that room and said: "Mrs. Morris, Caroline Harris; Caroline Harris, Mrs. Morris. I am glad to see you get acquainted." Witness recognized the defendant instantly as the woman who, as Sabine Johnson, got her clothes nearly a year before.

Officer James Cahill testified, for the State, that he arrested the defendant. He found her at the police station engaged in prosecuting a woman named Laura Moore, for abusing her. Witness sent for Mr. and Mrs. George T. Morris. Defendant de-

nied knowing Mrs. Morris, or having any knowledge of the clothing. The articles in court were found in the defendant's house. The State closed.

Lucinda, the defendant's daughter, was the first witness in her behalf. She testified that on Wednesday, about two weeks before Christmas of 1884, she and her mother, on a shopping tour, stopped at the store of Mr. Womack, at the corner of Post Office and Twenty-second street, in the city of Galveston. While in that store the little boy of Mrs. Morris, who lived opposite, came and told the defendant that his mother wanted to get the defendant to do some washing for her. Defendant at first declined the proffered work, but witness prevailed upon her to go across the street and see Mrs. Morris about it. Mrs. Morris and defendant negotiated the contract in the presence of witness and Mrs. Morris's little girl. Mrs. Morris asked the defendant her name, and defendant told her truly that her name was Caroline Harris, and that she lived out on Fortieth street and Avenue I, near Mr. Mitchell's house. Defendant did not tell Mrs. Morris that her name was Sabine Johnson. Mrs. Morris did not write down the defendant's name. Mrs. Morris complained a great deal about her regular wash woman disappointing her, and said that she wanted the clothes done up for Christmas. Defendant priced the work to be done at four dollars. Mrs. Morris said that she would only give two dollars and a half for that washing, as it was light, but would add another fifty cents when the washing grew heavier.

The articles of clothing were taken to the defendant's house on that day, Wednesday. They were washed and hung out on the next day. On that night, every article, save those in court, were stolen from the line in defendant's yard. Early on Friday morning witness's father went out to feed his team. When he opened the door he called back and asked defendant if she left any clothes out over night. Defendant replied that she did. Her husband replied: "Well, they are gone now." A pillow case was found on the fence at the point over which the thief crossed with the clothes. Deposits of dirt showed where the fence was scaled, and the tracks of some person led from that point and from the yard towards Avenue H. The defendant's house was situated remote from the business part of the city, and was beyond the beat of any regular policeman. The few articles not stolen were those which hung nearest the house. On that same Friday morning, the morning after the theft, witness and

her mother went to the office of Judge Fontaine to get a search warrant and search the houses in the neighborhood for the clothes. Fontaine declined to issue so sweeping a warrant, and said that he could only give it if it was known where the clothes could be found. Officer Scott was present and heard defendant trying to get the search warrant. He advised her to "lie low," keep a look out, and inform him if she could find any one in possession of any one of the missing articles. When witness and her mother started to the police station on the morning after the theft, the defendant's husband, and daughter, Savannah, left to go to Mrs. Morris's for the purpose of reporting the theft and paying for the clothes. About six months after the theft of the clothes, a colored woman told defendant that she saw some of them hanging out at the house of Laura Moore. Defendant went to Laura's house and accused her of the theft. Laura abused the defendant, and defendant had her arrested. While the case which grew out of that arrest was being prosecuted, officer Cahill summoned Mrs. Morris, and arrested defendant. Mrs. Morris did not recognize the defendant until told who she was. Witness's father and sisters went to Mrs. Morris's to make a settlement for the clothes on the morning after the theft, which was six months before the defendant's arrest. Another attempt to settle was made after the defendant's arrest, when Mrs. Morris agreed to accept fifteen dollars in full satisfaction for the clothes. She said that fifteen dollars would fully pay her for the clothes, and that she did not want to prosecute. Witness's father was employed at the lumber yard of C. H. Moore. His family had lived in Galveston for nineteen years, and no member of it had ever before been arrested for theft. Defendant had long washed for the best white families in the city, and had always given satisfaction.

Milton Harris, the defendant's husband, was the next witness. He testified that, one night, about two weeks before Christmas, 1884, a lot of clothing belonging to the Morris family was stolen from the defendant. They were taken from the clothes line in the witness's yard. Mud on the fence showed plainly where the thief passed over the fence and out of the yard. From that point the foot prints of the retreating thief led towards Avenue H and Fortieth street, whence they could not be traced. To the knowledge of the witness, the defendant made inquiries for the clothes through out the neighborhood, and then, with her daughter Lucinda, went to the police station to report the theft. That

was on the morning after the theft. On that same morning the witness and his daughter Savannah went to Mrs. Morris and informed her fully of the theft of the clothes, and proposed to execute to her a mortgage on witness's house until he could get the money to pay for the clothes. Nearly nine months after the theft defendant received information to the effect that one Laura Moore had the clothes. Defendant accused Laura Moore of stealing the clothes, and Laura abused and insulted the defendant, who, in turn, had Laura arrested and prosecuted before the mayor's court. It was while the defendant was at the mayor's court, attending as a witness against Laura Moore, that she was arrested by Cahill upon this charge. Witness and his wife had always been willing and anxious to pay Mrs. Morris for the clothes. Mr. Morris was not at home on the day after the theft, when witness offered Mrs. Morris a mortgage on his house to secure her against the loss of the value of the clothes. In reply to that proposition, Mrs. Morris said that she would submit the proposition to her husband. Witness reported to his wife, the defendant, the conversation he had with Mrs. Morris. The clothes were delivered to, and stolen from the defendant in the month of December, 1884.

Police officer Scott was next introduced by the defendant, but he denied that he knew anything about defendant applying at the police station in December, 1884, for a search warrant to apprehend the thief of the Morris clothes. He denied that he had ever told the defendant that he could, and would, testify that she applied for such a search warrant. He denied that he ever advised defendant to "lie low" and report to him if she discovered any of the missing articles in the possession of any one.

Savannah Smith testified, for the defense, that on the morning after the theft of the clothes, she went with her father, Milton Harris, to Mrs. Morris. She fully corroborated her father as to what transpired between him and Mrs. Morris. She testified, further, that her mother, the defendant, cut the names from the few articles left by the thief, some time after the proffer of restitution was voluntarily made to Mrs. Morris, and when she thought, from Mrs. Morris's message, that she would "see her husband," that the proposition was accepted, and was satisfactory. Defendant, treating Mrs. Morris's action upon the proposition to pay for the clothes, as an acceptance, considered the remnant of the clothes left by the thief not worth returning, and as, in fact, her own.

Gilbert Green and Charley Lewis testified, for the defense, that on the morning in December, 1884, after the theft of the clothes, they saw and heard defendant "raising" the neighborhood about the stolen clothes. They also followed the tracks of some one from the defendant's yard to where they disappeared, near Avenue H. Green stated that he advised the defendant to report the theft at the police station, and apply for a search warrant.

William Lundy, who lived on the defendant's place, testified, for the defense, that he heard the defendant making inquiries throughout the neighborhood, on the morning after the theft, which he declared occurred in December, 1884. He testified also to the uniform good character of the defendant.

The motion for new trial raised the questions discussed in the opinion.

*W. L. Wilson*, for the appellant.

*J. H. Burts*, Assistant Attorney General, for the State.

ON MOTION FOR REHEARING.

WILLSON, JUDGE. At a former day of the present term of this court, the judgment of conviction in this case was affirmed without an opinion in writing. Defendant, by his counsel, now moves for a rehearing, the only ground of his motion being that the statement of facts does not show sufficient legal proof of the value of the property embezzled.

The indictment charges the embezzlement of numerous articles of clothing, and alleges the value of each article separately, the aggregate values amounting to about fifty dollars. It is shown by the statement of facts that Mrs. Morris, a witness for the State, testified as follows: "The defendant obtained the clothing mentioned in the indictment to wash and return upon a day named, a few days thereafter. The values are about as alleged, amounting to more than twenty dollars." It is insisted that this mode of proving the value of the articles is not permissible, because reference must be had to the indictment in order to make it certain, and the indictment was not read in evidence.

Notwithstanding the earnest and confident manner in which counsel for defendant has urged this objection to the conviction, we must hold that the objection is not a sound one. It is true

that the indictment was not formally read in evidence to the jury, nor was it necessary that it should have been so read. It was read in the presence of the jury as a pleading in the case, and its contents were thus before the jury and within their knowledge. It was a record in the case, a part of the judicial proceedings in the case, and for all the purposes of the case could be referred to and considered, the same as if had been formally read in evidence. A court will take judicial notice of the record before it on trial, and of all the proceedings and pleadings in such case. (1 Whart. Ev., sec. 325, and cases there cited; Robinson v. Brown, 82 Ill., 279.) It was judicially known, therefore, to the court, that the goods alleged to have been embezzled were alleged in the indictment to be of a certain value, which value exceeded twenty dollars, and the testimony of the witness that said goods were of about the value alleged in the indictment, and of a greater value than twenty dollars, was admissible, and was sufficient to establish the allegation of value and show that the offense committted was a felony.

We can see no error in the affirmance of the conviction, and the motion for a rehearing is overruled.

*Motion overruled.*